**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**Carrie Johnson,**

    **Plaintiff,**

                              **Case No.: 2:10-CV-076**
**-v-**                                      **JUDGE SMITH**
                                     **Magistrate Judge Abel**

**The Washington County Career Center,** *et al.***,**

    **Defendants.**

**OPINION AND ORDER**

      Plaintiff Carrie Johnson initiated this action against Defendants The Washington County Career Center ("WCCC") and Dewayne Poling, in his official capacity as the Director of Adult Education for WCCC. Plaintiff alleges that Defendants unlawfully discriminated against her by excluding her from participating in and denying her the benefits of WCCC's services, programs, or activities in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12131 *et seq*. and Ohio's disability discrimination law, Ohio Revised Code Section 4112.02(G). Defendant Dewayne Poling previously moved to dismiss the claims against him (Doc. 4). The Court granted in part and denied in part Defendant Poling's Motion to Dismiss, dismissing Counts I, II, III, and V against Defendant Poling (Doc. 13). Count IV of Plaintiff's Complaint remains pending against Defendant Poling and all of Plaintiff's claims against Defendant WCCC remain pending.

      Defendants WCCC and Poling now move to dismiss Plaintiff's state law claims against both of them. Plaintiff has responded. For the reasons that follow, Defendants' Motion is **GRANTED**.

## I. BACKGROUND

Plaintiff Carrie Johnson is an individual citizen of the State of Ohio. Plaintiff has a learning disability involving reading and comprehension, and is substantially limited in the major life activity of learning. (Compl. ¶6). On December 19, 2008, Plaintiff was admitted to Defendant WCCC's Surgery Technologist Program that began on January 5, 2009. Plaintiff requested a reasonable accommodation for her disability, including the use of a Kurzweil Reader and a word bank. (Compl. ¶¶ 8-9).

On January 5, 2009, Defendant Dewayne Poling, Director of Adult Technical Training, told Plaintiff to come early to class so that he could show her the Kurzweil Reader. When Plaintiff arrived Defendant Poling failed to show her the Kurzweil Reader. Instead, he waited until a group of students assembled for a meeting before discussing Plaintiff's requested accommodation in front of the assembled students. (Compl. ¶ 10).

On January 6, 2009, Defendant Poling met Plaintiff as she was headed into class and asked her to sign a blanket medical release. Plaintiff asserts that Poling would not allow her to review it with her case worker before signing it and she therefore refused to sign it. Defendant Poling then destroyed the document. Again, Plaintiff says that Defendant Poling discussed her disability and accommodation in front of her classmates. Plaintiff also states that she was late for class and missed her study time because of the unscheduled meeting. (Compl. ¶ 11).

In a meeting on January 7, 2009, Defendant Poling and Lori Sayre, Surgical Technologist Program Coordinator, questioned whether Plaintiff could complete the Surgical Technologist Program because of her disability and also questioned her generally about her disability. (Compl. ¶ 12).

Plaintiff describes that Defendant Poling repeatedly tried to get her to sign a blanket medical authorization to determine if she was actually disabled and to determine what, if any, accommodation was necessary. Plaintiff refused to sign the release. Plaintiff claims she provided documentation to Defendants to prove her disability, including a letter from her case worker. (Compl. ¶¶ 13-14).

On January 15, 2009, Defendant Poling informed Plaintiff that an alleged patient confidentiality issue in her clinical practice precluded her from using the Kurzweil Reader. Defendant gave Plaintiff the option to withdraw from the Surgical Technologist Program with a full refund, or continue with the program in the event that some future circumstance would permit an accommodation. (Compl. ¶ 15).

On January 21, 2009, Plaintiff missed a test due to illness. She presented medical documentation to Defendant and requested a make-up exam. On January 23, 2009, Plaintiff went to take the make-up exam, but WCCC was closed. On January 26, 2009, Plaintiff attempted to take the test again, but Defendant refused to provide a word bank. On February 2, 2009, Plaintiff informed Defendant Poling that she could make up the exam on February 3rd or 5th, but not the 4th due to a conflict with appointments she had scheduled. Defendant Poling demanded she take the test on February 4th. Plaintiff refused to take the test then and Plaintiff's attorney sent a letter on her behalf. Defendant Poling then allowed Plaintiff to make-up the test during class time. (Compl. ¶¶ 16-20).

Plaintiff describes that she had limited access to the Kurzweil Reader because of the interference of high school classes and meetings scheduled in the room where it was located. Further, Defendant would not scan Plaintiff's materials, so she had to scan them herself during the

limited amount of time she had access. As a result, Plaintiff describes that her study time was significantly reduced. (Compl. ¶ 21).

On March 29, 2009, Defendant WCCC dismissed Plaintiff from the Surgical Technologist Program for a poor grade in her medical terminology class. Plaintiff claims that Defendant's actions prior to the test made it impossible for her to receive a passing grade, including:

 a. Defendant refused to allow Plaintiff to use the word bank for the medical terminology exam;
 b. The medical terminology class was on Wednesday nights. Every Wednesday afternoon, including the date of the final examination, either Defendant Poling or one of his subordinates at Defendant Poling's direction, interrupted Plaintiffs study time at school for issues Defendant demanded resolution at that time, instead of scheduling a meeting during a time when Plaintiff was not studying;
 c. During the medical terminology course, Plaintiff informed Defendant that the Kurzweil Reader was reading the medical terminology incorrectly. Plaintiff asked for assistance in remedying the situation, but Defendant refused. In order to correct the problem herself, Plaintiff located a Kurzweil Reader manual online that helped her reconfigure the Kurzweil Reader. Then Defendant moved Plaintiff into a room without internet access so that she could no longer access the manual;
 d. Plaintiff was not permitted to ask any questions during the medical terminology exam, but students without learning disabilities received assistance during the exam;
 e. Plaintiff did not receive graded copies of her previous tests in a timely manner, but students without learning disabilities received graded copies of previous tests in a timely manner to study for future tests. As a result, Plaintiff was unable to use them as a study guide.

(Compl. ¶ 22).

On April 2, 2009, Plaintiff requested to re-take the medical terminology exam with the appropriate accommodations. On April 21, 2009, Defendant notified Plaintiff that she could re-take the medical terminology exam, but she could not use a word bank. Plaintiff claims that without the accommodation, she could not pass the test. Further, Plaintiff claims that the delay in responding to her request meant that the Spring Quarter for the Program had already begun and

4

she was unable to enroll. (Compl. ¶¶ 23-24).

Plaintiff initiated this case on January 26, 2010, alleging violations of the ADA and Ohio's Disability Discrimination Law. In Count I, Plaintiff alleges that Defendants discriminated against her by excluding her from participating in and denying her the benefits of WCCC's services, programs or activities in violation of the ADA. In Count II, Plaintiff alleges that Defendants retaliated against her for filing suit against Defendant WCCC alleging disability discrimination. In Count III, Plaintiff alleges that Defendants discriminated against her by excluding her from participating in and denying her the benefits of WCCC's services, program or activities in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq*. In Counts IV and V, Plaintiff alleges that Defendant unlawfully denied her the full enjoyment of Defendant WCCC's Surgical Technologist Program and failed to provide her with a reasonable accommodation in violation of Ohio's Disability Discrimination Law. The Court has previously dismissed Counts I, II, III, and V against Defendant Poling. Both WCCC and Poling now move to dismiss the state law claims against them, Counts IV against both of them and Count V against WCCC.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." A Rule 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it. *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983). The merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim. Consequently, a complaint will be dismissed pursuant to Rule 12(b)(6) only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. *See Rauch*

5

*v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978). Rule 12(b)(6) must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure, which requires the complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]"

A court, in considering a 12(b)(6) motion to dismiss, must "construe the complaint in the light most favorable to the plaintiff," accepting as true all the plaintiff's factual allegations. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). Although in this context all of the factual allegations in the complaint are taken as true, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

Furthermore, to survive dismissal pursuant to Rule 12(b)(6), a claim must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Twombly*, at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, at 1950. While a complaint need not contain "detailed factual allegations," its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, at 555. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' " *Iqbal*, at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). In the final analysis, the task of determining plausibility is "context-specific [and] requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### III. DISCUSSION

Defendants WCCC and Dewayne Poling move to dismiss Plaintiff's state claims against them, which includes Count IV against Poling and Counts IV and V against WCCC. Defendants argue that both WCCC and Poling in his official capacity are entitled to immunity under Ohio's statutory tort immunity statute, Ohio Revised Code §2744.

**A.      Plaintiff's State Law Claims**

In Counts IV and V of her Complaint, Plaintiff alleges violations of Ohio's Disability Discrimination Laws, Ohio Revised Code §§ 4112.01, *et seq*. Specifically, in Count IV, Plaintiff alleges that Defendants are a "place of public accommodation" pursuant to Ohio Revised Code § 4112.01(A)(9) and Defendants violated Ohio Revised Code § 4112.02(G) by denying her full enjoyment of its accommodations, advantages, facilities, or privileges. (Compl. ¶¶ 43-45). In Count V, Plaintiff alleges that Defendants are an "educational institution" pursuant to Ohio Revised Code § 4112.022, and they failed to provide Plaintiff with a reasonable accommodation in violation of Ohio Revised Code § 4112.022(A) and (D). (Compl. ¶¶ 47-49).

Defendants first argue that Plaintiff's Count IV against Mr. Poling should be dismissed because the claim is only brought against Poling in his official capacity and is therefore redundant of Plaintiff's Count IV against WCCC. The Court agrees with Defendants. "Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, n. 55 (1978) ("the real party in interest in an official-capacity suit is the government entity itself and not the named official."); *see also DiGiorgio v. City of Cleveland*, 2011 Ohio 5878 (Ohio Ct. App. 2011) ("a suit against an employee of a political subdivision in the employee's official capacity is an action against the entity itself and the employees are entitled to the same immunity due

to the political subdivision."). Accordingly, Count IV against Defendant Poling is dismissed.[1]

Turning to Plaintiff's claims against Defendant WCCC, Defendants argue that Plaintiff Johnson's Count IV seeks monetary damages for an alleged violation of Ohio Revised Code § 4112.02(G), which sounds in tort and therefore Defendant WCCC, as political subdivision, is entitled to statutory tort immunity. *See Geiger v. Pfizer, Inc.*, 2009 U.S. Dist. LEXIS 34982 (S.D. Ohio 2009) (Marbley, J.) ("[A]n action brought under Ohio Rev. Code 4112 is a "tort action" as it is "a civil action for damages for injury or loss to person or property.").

Ohio Revised Code § 2744.02(A)(1) provides nearly absolute immunity to political subdivisions for any damage to persons or property allegedly caused by any act or omission of the subdivision or its employee in connection with a governmental or proprietary function. The purpose of the immunity is to limit their exposure to money damages. The statute specifically provides: "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." Ohio Rev. Code § 2744.02(A)(1).

Immunity provides a shield to the exercise of governmental or proprietary functions by a political subdivision, unless one of the exceptions specifically recognized by statute applies. Ohio Revised Code § 2744.02(B) sets forth the following five exceptions to the general grant of immunity accorded to political subdivisions: (B)(1) the negligent operation of a motor vehicle by an employee;

---

[1] The Court acknowledges that in its previous Opinion and Order (Doc. 13), the Court retained jurisdiction over this claim against Defendant Poling because of judicial economy, to prevent two separate lawsuits in two separate courts. However, in light of the arguments raised by Defendants in the current motion, the Court believes that dismissal is now appropriate.

(B)(2) the negligent performance of proprietary functions; (B)(3) the failure to keep public roads open and in repair; (B)(4) the negligence of employees occurring within or on the grounds of certain buildings used in connection with the performance of governmental functions; and (B)(5) the express imposition of liability by statute. *See Engleman v. Cincinnati Bd. of Edn.*, 2001 Ohio App. LEXIS 2728 at *8 (Ohio Ct. App. June 22, 2001)

Defendants argue that a school district is a 'political subdivision' and the operation of a vocational school by a public entity, like the Washington County Joint Vocational School District, is a government function. *See* Ohio Rev. Code § 2744.01(F) ("'Political subdivision' . . . means a municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state."); *see also Craycraft v. Simmons*, 2011 Ohio 3273 (Ohio Ct. App. 2011) ("The 'provision of a system of public education' is expressly identified in R.C. 2744.01(C)(2)(c) as a governmental function.). Defendants argue, that it follows that if statutory immunity is granted to the Washington County Joint Vocational School District, it extends to the WCCC, because it is an instrumentality of a political subdivision, the Washington County Joint Vocational School District. *See Wilson v. Stark Cty. Dept. Of Human Servs.*, 70 Ohio St.3d 450, 452-53 (1994); *Lambert v. Hamilton Cty. Clerk of Courts*, 125 Ohio St.3d 231 (2010).

Plaintiff does not appear to contest that WCCC is a political subdivision, but rather, argues that if the Court were to adopt Defendants' argument, then political subdivisions would be completely exempt from liability for violations of all of Ohio's anti-discrimination laws. Plaintiff urges the Court to examine the statutory provisions, including the definitions, to determine whether Chapter 4112 expressly imposes liability upon political subdivisions for each of Plaintiff's claims. Plaintiff directs

9

the Court to examine the statutory language and construction of Chapter 4112, in conjunction with the ADA to ultimately determine that public entities are places of public accommodation under Ohio Revised Code § 4112.02(G). Plaintiff notes the distinction between Title II and Title III of the ADA. A public entity is specifically included in Title II, whereas Title III specifically applies to private entities. While Chapter 4112 of the Ohio Revised Code is not separated into titles that cover separate entities, it does define "place of public accommodation" as

> any inn, restaurant, eating house, barbershop, public conveyance by air, land, or water, theater, store, other place for the sale of merchandise, or any other place of public accommodation or amusement of which the accommodations, advantages, facilities, or privileges are available to the public.

Ohio Rev. Code § 4112.01(A)(9).

Plaintiff argues that "[u]nlike the ADA where public entities are excluded, R.C. 4112.02(G) does not exclude political subdivisions from its definitions of places of public accommodations." (Pl.'s Memo. in Opp. at 6). However, Defendants correctly assert that the exception under Ohio Revised Code § 2744.02(B)(5) does not apply merely because a statute imposes a duty or responsibility. Liability requires a legal obligation enforceable by a civil remedy. *See Campbell v. Burton*, 92 Ohio St. 3d 336, 341 (2001) (superceded on other grounds, definition of liability remains mandatory authority in Ohio). Defendant argues that neither Ohio Revised Code § 4112.02(G), nor § 4112.022 imposes a civil remedy for violation of its terms, therefore, Plaintiff cannot meet any of the exceptions from immunity.

Additionally, Plaintiff urges this Court to disregard Sixth Circuit precedent of *Howard v. Beavercreek*, 276 F.3d 802, 808 (6th Cir. 2002), arguing that the legal analysis is flawed and a mistake. And, instead, offers the case of *Jones v. Lakeview Sch. Dist.*, 2007 U.S. Dist. LEXIS 52353, at *14 (N.D. Ohio July 19, 2007), to illustrate that at least one district in Ohio has permitted

10

a plaintiff to bring a claim against a school district under Ohio Revised Code § 4112.022. However, in *Jones*, there is no indication that this issue of immunity was ever raised and the court ultimately determined that the plaintiffs' alleged violations of Ohio Revised Code § 4412 and/or federal law failed. Whereas in *Howard*, the Sixth Circuit affirmed the district court's dismissal of the plaintiff's claims for damages based on its determination that Defendant Beavercreek was entitled to immunity under Ohio Revised Code § 2744.02(A)(1).

Accordingly, finding that none of the aforementioned exceptions are applicable in this case, the Court concludes that Defendants are immune from liability pursuant to Ohio Revised Code § 2744.02(A). Even if Defendant Poling had not already been dismissed, this immunity would extend to him. *See* Ohio Rev. Code § 2744.03(A)(6).

## IV. CONCLUSION

Based on the aforementioned, the Court **GRANTS** Defendants WCCC and Dewayne Poling's Motion to Dismiss Plaintiff's state law claims. The Clerk shall enter a final judgment in this case in favor of Defendant Dewayne Poling on Count IV, and in favor of Defendant WCCC on Counts IV and V. Defendant Dewayne Poling is hereby dismissed from this case. Plaintiff's federal claims remain pending against Defendant WCCC.

The Clerk shall remove Document 25 from the Court's pending motions list.

**IT IS SO ORDERED.**

      */s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**